IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISON

LAMAR ALLAN JOHNSON,

    Plaintiff,

v.

CITY OF ST. LOUIS, et al.,

    Defendants.

Civil Action No. 4:24-cv-0087-HEA

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXTEND THE MEDIATION DEADLINE AND REQUST FOR A HEARING**

Plaintiff Lamar Johnson, through undersigned counsel, responds to Defendants' *Motion for Leave to Extend the Deadline by Which the Parties Must Complete Mediation* ("Motion") and moves the Court to set the matter for a hearing. In response to the Defendants' Motion and in support of his request for a hearing, Plaintiff states:

1. The Court referred the case to alternative dispute resolution and ordered the parties to complete mediation by June 15, 2025. (Doc. 40).

2. On April 24, 2025, the parties moved to extend the deadline to complete mediation by June 24, 2025, (Doc. 75), which the Court granted. (Doc. 76).

3. On June 20, 2025, Defendants asked the Court to extend the deadline from June 24, 2025 to August 8, 2025. (Doc. 85). Also on June 20, 2025, the parties conferred. Although Plaintiff disagrees with Defendants' representation to the Court

1

that a representative of the State is required to approve a potential settlement, given the City's position, Plaintiff agreed that mediation should not occur on June 24, 2025.

4. On June 23, 2025, the Court granted Defendants' Motion and ordered that mediation occur by August 8, 2025. (Doc. 86).

5. In support of their Motion, Defendants claim that House Bill 495 ("HB 495") passed by Missouri's General Assembly and signed by the Governor on March 26, 2025, transferring control of the St. Louis Metropolitan Police Department ("SLMPD") to the State, directly affects mediation because in order "for mediation to take place, representatives with settlement authority for both parties must be present. A representative from the City of St. Louis alone would not have authority to settle on behalf of Defendants." Motion, ¶ 6 (citing RSMo. § 84.325.3).

6. Defendants' Motion suffers from at least two legal flaws, each of them fatal. First, the clear language of HB 495 expressly prohibits state liability for a settlement or judgment in this case, though the City may later be eligible to request a reimbursement of up to one million dollars. *See* RSMo 105.726.1 through .5, known as the State Legal Expense Fund ("SLEF"). Second, case law defining the limits of the SLEF and expressly excluding state liability for judgments against police departments, police officers, or boards of police commissioners, makes plain that the City is the only entity responsible for satisfying a settlement or judgment in Johnson's favor.[1]

---

[1] *State ex rel. Hawley v. City of St. Louis,* 531 S.W.3d 602, 604 (Mo. App. E.D. 2017) (upon transfer of the City's police force to local control, all SLEF liability for St. Louis Police commissioners and officers terminated on September 1, 2013); *Holmes v.*

2

7. It is common knowledge that the 2025 state control legislation passed in HB 495 and enacted by the Governor is not the first time the SLMPD has been under state control.[2] From 1861 to September 1, 2013, the State controlled the SLMPD, and the issue of liability for judgments against the SLMPD, its officers, or a board of police commissioners has been heavily litigated, often with Defendants' counsel from the City Counselor's Office as counsel in those cases.[3] The law enacted or modified by HB

---

*Steelman*, 624 S.W.3d 144 (Mo. 2021) (right to payment from the SLEF attaches when a claim is made and the time respondent made his claim, § 105.726.3, prohibited SLEF from paying claims against police officers)); *City of St. Louis v. State of Missouri and Andrew Bailey, Attorney General*, 2025 Mo. App. LEXIS 195, 2025 LX 148093 (Mo. App. 2025) (the "legally significant" date for determining SLEF coverage of a claim is when the lawsuit or claim is filed, not when the underlying conduct occurred).

[2] *See* Jack Suntrup, State is taking over St. Louis police, but legal liabilities stay with city, St. Louis Post Dispatch (May 9, 2025), https://www.stltoday.com/news/local/government-politics/article_b7319786-e068-4346-9ef8-ba48e25e2689.html; Josh Merchant, How will KC pay for 18.1 million in lawsuit settlements?, Kansas City Beacon (May 21, 2025) https://thebeaconnews.org/stories/2025/05/21/kcpd-budget-lawsuit-settlements-kidd-lamb/

[3] In *Holmes v. Steelman*, 624 S.W. 3d 144 (Mo. 2021), the Attorney General appealed a judgment in favor of Michael Holmes on his claim that the SLEF was obligated to pay his 2016 judgment against two former officers of the SLMPD. On appeal, the State, through the Attorney General, claimed the circuit court erred in applying the section of 105.726.3 in effect in 2003, when the former officer filed a false report that caused Holmes' wrongful arrest and conviction, rather than the version in effect when Holmes filed his lawsuit against the former officers. The Supreme Court reversed, holding "a right to payment from SLEF does not arise until a claim is made[.]" *Id*. at 150.

In *City of St. Louis v. State*, 699 S.W.3d 503 (Mo. App. E.D. 2024), the City, through the City Counselor's Office, argued that the date the conduct occurs is dispositive to coverage of police claims under the SLEF. The City sought reimbursement from the SLEF for its payment to satisfy a judgment against a City police officer in a civil rights action against the officer related to an arrest. *Id*. at 504-05. The incident occurred in 2012 [when the SLMPD was under state control] and the suit was filed in 2016 [when the SLMPD was under the City's control]. The Court, following the direction in *Holmes*, reaffirmed that the "legally significant" date for purposes of a

3

495 does not change the existing exclusion of state liability for claims against state-controlled police departments, but it does increase the amount available to Kansas City and St. Louis for reimbursement of satisfied claims from one million to two million per fiscal year, split equally between the two cities. In Kansas City and St. Louis, where the two police departments under state control are located, the media has documented criticism of state control in part because the State does not meaningfully share in the state-controlled police department's liability.[4]

8. In HB 495, the legislature modified § 105.726.3, a statute in place since 2005, when the General Assembly overruled the holding of *Smith v. State*, 152 S.W.3d 275 (Mo. 2005). In *Smith*, the Missouri Supreme Court interpreted § 105.711.2 to find SLEF provided representation by the Attorney General, reimbursement for

---

SLEF claim is the filing of the suit. *Id.* at 506. Because the claim at issue was filed in 2016, "well after the September 1, 2013 completion of transfer to local control" the SLEF "preclude[ed] reimbursement" to the City. *Id.*

In 2025, the City again sought reimbursement under the SLEF for a 2019 settlement payment arising out of conduct which occurred in 2011 (during state control of the SLMPD). The City satisfied the judgment against the police officer in 2013, however in 2017, discovery was reopened after a claim was made that the Board and the Attorney General failed to disclose two DNA reports while the wrongful death suit was pending. The tests concluded the officer's DNA was on the trigger and grip of the revolver found in the decedent's car as well as the revolver's head screw. A second settlement was reached in 2019 and the City sought reimbursement from the SLEF. The Court reaffirmed the "legally significant" event for determining SLEF coverage for a claim is when the lawsuit is filed, not when the underlying conduct occurred. *City of St. Louis v. State*, 2025 Mo. App. LEXIS 195 (Mo. App. E.D.)

[4] Josh Merchant, *KCPD already maxed out its lawsuit fund for the year: 'What the hell are we doing here?'*, Kansas City Public Radio (May 26, 2025) https://www.kcur.org/news/2025-05-26/kcpd-lawsuit-settlements-kidd-lamb ("Lucas has called on the state to contribute more for lawsuit settlements given the governor's oversight of the police board. He called the current $1 million yearly contribution 'woefully inadequate.'"); Suntrup, *supra* note 2.

4

expenditures in defending lawsuits, and satisfaction of judgments or settlements brought against members of the then-existing St. Louis Board of Police Commissioners or its officers because under § 84.010 et seq. the Board was an "agency of the state." As an "agency of the state" the Court determined that the St. Louis Board of Police Commissioners and its officers were entitled to coverage under the SLEF, including representation by the Attorney General and reimbursement for monies expended in defending lawsuits and for satisfaction of judgments or settlements pertaining to those lawsuits. *Id*. at 278-79.

9. In response to *Smith*, the General Assembly amended the SLEF to specifically exclude coverage for claims against a board of police commissioners or a police officer. Section 105.726.3 (Cum. Suppl. 2005) overruled *Smith* and provided that "[m]oneys in the state legal defense fund shall not be available for the payment of any claim or any amount required by a final judgment…against the board of police commissioners…including the commissioners, any police officer…" The intent of the General Assembly in overruling *Smith* by statute – the State is not liable for judgments against police departments or their officers – has been consistently reaffirmed by Missouri courts and subsequent modification and amendment to Missouri statute, including HB 495.

10. In 2005, the legislature further amended § 105.726 to add subsections .4 and .5, articulating the role of the Attorney General and further limiting coverage of the SLEF by time. The 2005 version of Subsection .4 provided that the "attorney general shall represent, investigate, defend, negotiate, or compromise all claims under

5

sections 105.711 to 105.726 for the board of police commissioners, any police officer, other employees, agents, representatives, or any other individual or entity acting or purporting to act on their behalf," if requested. *Holmes v. Steelman*, 624 S.W.3d 144,150 (Mo. 2021) (quoting section RSMo § 105.726.4 (Supp. 2005). Subsection .5 "prohibit[ed] SLEF from paying claims or judgments against police officers if the claims were tendered to the attorney general after August 28, 2005." *Id*. Otherwise, "claims against employees of police boards would not be covered by the Fund." *Id*., quoting *Sherf v. Koster*, 371 S.W.3d 903, 907 (Mo. App. 2012).

11. In 2012, Missouri voters passed Proposition A, which authorized the City of St. Louis to establish its own police force free of state control. *State ex. rel Hawley v. City of St. Louis*, 351 S.W.3d 602, 604 (Mo. App. E.D. 2017). The City assumed control of the SLMPD on September 1, 2013. *Id*. Proposition A amended the final sentence of § 105.726.3 to permit reimbursement from SLEF to the City, as the successor to the St. Louis Board of Police Commissioners, for claims that are eligible for payment under SLEF: "[e]xcept that the commissioner of administration shall reimburse from the legal expense fund the board of police commissioners established under section 84.350 [the Kansas City Police Board] and any successor-in-interest established pursuant to section 84.344 [the City of St. Louis as successor to the St. Louis Police Board], for liability claims otherwise eligible for payment under section 105.711 paid by such board up to a maximum of one million dollars per fiscal year." RSMo § 105.726.3 (Supp. 2013). In a series of decisions where Defendants' counsel from the City Counselor's Office was counsel of record, Missouri courts consistently denied

6

reimbursement claims from the City to SLEF. *City of St. Louis v. State*, 699 S.W.3d 503 (Mo. App. E.D. 2024); *City of St. Louis v. State of Missouri & Andrew Bailey, Missouri Attorney General*, 2025 Mo. App. LEXIS 195 (Mo. App. E.D. 2025) (transfer denied).

12. HB 495 leaves the express exclusion of state liability for judgments against the newly formed St. Louis Board of Police Commissioners or its officers for post-2005 police claims intact and modifies § 105.726.3 -.5 to increase monies for *reimbursement* for "otherwise eligible" liability claims from a maximum of one million per fiscal year to two million per fiscal year, shared equally between the Kansas City Board of Police Commissioners and the St. Louis Board of Police Commissioners:

> Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under chapter 84, including the commissioners, any police officer, notwithstanding sections 84.330 and 84.710, or other provisions of law, other employees, agents, representative, or any other individual or entity acting or purporting to act on its or their behalf. Such was the intent of the general assembly in the original enactment of 105.711 to 105.726, and it is made express by this section in light of the decision of *Wayman Smith, III, et al. v. State of Missouri*, 152 S.W.3d 275. Except that the commissioner of administration shall reimburse from the legal expense fund the boards of police commissioners established under chapter 84 for liability claims otherwise eligible for payment under section 105.711 paid by such boards on an equal share basis per claim up to a maximum of two million dollars per fiscal year.

§ 105.726.3 (Supp. 2025)

7

13. Unless the State has voluntarily assumed liability for a Johnson settlement or judgment, which Plaintiff would welcome, Defendants' assertion that the State must approve a settlement reached in mediation is against the clear language of the statute authorizing state control of the SLMPD enacted on March 26, 2025, and Missouri case law. The only party liable for a Johnson settlement or judgment is the City of St. Louis. RSMo § 105.711 to 105.726 (Supp. 2025). Upon satisfaction of a settlement or judgment in Plaintiff's favor, the City can make a claim to the administrator of the SLEF for reimbursement, if the City believes reimbursement is authorized. *See* § 105.726.5 (Supp. 2025).

14. In sum, the reason underlying Defendants' request to extend the mediation deadline stands in direct conflict with the clear language of § 105.711 – 726, as well as existing case law interpreting these statutes during periods of prior state control and during local control of the SLMPD. Unless the State has volunteered to satisfy a Johnson settlement, or the Board of Police Commissioners requested the State's representation and the State has determined the claim otherwise qualifies under SLEF,[5] there is no legitimate argument that the State has either liability for a

---

[5] *See* RSMo § 150.726.4 (Supp. 2025) (authorizing representation of otherwise authorized claims by the attorney general if requested by the board of police commissioners); *State ex rel. Hawley v. City of St. Louis*, 531 S.W.3d 602, 608 (Mo. App. E.D. 2017)("The purpose of § 150.726.4 is two-fold: the AGO is required upon request to represent the Board or its successor on covered claims, and the Board or its successor is required to, in exchange, fairly compensate the AGO for such representation."); *Holmes v. Steelman*, 624 S.W.3d 144, 150-51 (Mo. 2021) ("Together sections 105.726.3 – 105.726.5, RSMO Supp. 2005, prohibit the SLEF from paying claims or judgments against police officers if the claims were tendered to the attorney general after August 28, 2005. Instead, those claims would qualify only for reimbursement and representation," if requested by the board)).

8

Johnson settlement or judgment or is an appropriate participant in mediation negotiations. Absent either of those circumstances—neither of which, to Plaintiff's knowledge, have occurred—the language of HB 495 and Missouri case law controls.[6] The responsibility for satisfaction of a Johnson settlement or judgment lies solely with the City, and the City is the only party who is authorized to approve a settlement.

15. For these reasons, Plaintiff moves the Court to set this matter for a hearing as soon as the parties and the Court are available and in advance of mediation. Plaintiff asks that the Court require the attendance of the parties and a representative from the State so that the role of the State in this case can be determined. Without this clarity, a productive mediation cannot occur.

**Dated: June 24, 2025**                          Respectfully submitted,

/s/ *Lindsay Runnels*
Lindsay Runnels, MO Bar No. 62075
Morgan Pilate LLC
926 Cherry Street
Kansas City, MO 64106
p. (816) 471-6694
e. lrunnels@morganpilate.com

Ann Sloan*, NY Bar No. 5880034
Rhianna Rey*, NY Bar No. 5814066
Emma Freudenberger, NY Bar No. 4538070

---

[6] Even if either of those circumstances occurred, the City would still have an obligation under the Court's alternative dispute resolution order to participate in mediation in order to negotiate settlement of Plaintiff's *Monell* claim against the City for its operation of the Circuit Attorney's Office. *See* Doc. 01 Compl. ¶¶ 242-53. Nowhere in Defendants' Motion do they suggest that the board of police commissioners is authorized by state law to assume liability for that claim.

9

>Amelia Green*, NY Bar No. 5428412
>*ptitted* pro hac vice
>NEUFELD, SCHECK, BRUSTIN,
>HOFFMANN & FREUDENBERGER, LLP
>200 Varick Street, Suite 800
>New York, NY 10014
>p. (212) 965-9081
>
>*Attorneys for Plaintiff Lamar Johnson*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2025, I electronically filed the foregoing document with the Clerk using the CM/ECF system, which provides electronic notice of the filing to all counsel of record.

/s/ *Lindsay Runnels*
Lindsay Runnels