# EXHIBIT 1

1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF MISSOURI
2              EASTERN DIVISION

3

4    LAMAR ALLAN JOHNSON,          )
                                   )
5         Plaintiff,               )
                                   )
6         v.                       )No. 4:24-CV-00087 HEA
                                   )
7    THE CITY OF ST. LOUIS,        )
     MISSOURI, et al.,             )
8                                  )
          Defendants.              )
9

10                  MOTION HEARING

11        BEFORE THE HONORABLE HENRY E. AUTREY
              UNITED STATES DISTRICT JUDGE
12
                   JANUARY 13, 2026
13

14   APPEARANCES:
     For Plaintiff:       Emma Kate Freudenberger, Esq.
15                        Annie Hartman Sloan, Esq.
                          NEUFELD SCHECK LLP
16                        200 Varick Street, Suite 800
                          New York, NY  10014
17
                          Lindsay Runnels, Esq.
18                        MORGAN PILATE LLC
                          926 Cherry Street
19                        Kansas City, MO  64106

20   For Defendant:       Ronnie L. White, II, Esq.
                          NATHAN AND KAMIONSKI LLP
21                        4220 Duncan Ave., Suite 201
                          St. Louis, MO  63110
22
     REPORTED BY:         ANGELA K. DALEY, CSR, RMR, FCRR, CRR
23                        Official Court Reporter
                          United States District Court
24                        111 South Tenth Street, Third Floor
                          St. Louis, MO  63102
25                        (314) 244-7978
          PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

2

**(PROCEEDINGS STARTED AT 2:05 P.M.)**

1

2          THE COURT:  This is the matter of Lamar Allan

3    Johnson, plaintiff, versus City of St. Louis, et al., case

4    number 4:24-CV-00087-HEA.  The matter is on the docket this

5    afternoon for purposes of proceeding on a hearing on a motion

6    filed by defendants, docket number 106, filed on October

7    the 25th of last year entitled Defendant's Motion to Stay

8    Proceedings Pending a Decision by the Eighth Circuit in *Clark*

9    *versus City of St. Louis*.

10          Let the record reflect that the parties are present

11    through counsel.  Defendant is present, movant on the motion

12    is present, through Mr. White, and the plaintiff in opposition

13    to the motion is present through Ms. Freudenberg -- is that

14    the correct pronunciation?

15          MS. FREUDENBERGER:  Freudenberger.

16          THE COURT:  Are we ready to proceed?

17          MR. WHITE:  Yes, Your Honor, but point of

18    clarification.  I was under the impression that we were here

19    on the motion to compel defendant's attendance at the

20    depositions.  Was that not...

21          THE COURT:  Well, isn't that kind of part of the same

22    thing?

23          MR. WHITE:  Yes, Your Honor.

24          THE COURT:  Okay.  Yes, sir?

25          MR. WHITE:  Good afternoon.  I'm Ronnie White here on

3

1  behalf of the defendants.  The defendants respectfully request

2  that this Court vacate the scheduling order presently in place

3  in this case, extending all deadlines until -- unless and

4  until the defendants can clarify the sources and

5  responsibility for litigation funding in this case and others

6  like it as well as whether or not defense counsel have

7  authority in this case to retain experts and otherwise

8  continue with and complete discovery.

9        Based on the enactment of Missouri Revised Statute

10  84.325, that caused significant confusion with the State and

11  the City regarding who is responsible for litigation funding,

12  whether or not they can grant authority for cases to go

13  forward with defense counsel.  And, in fact, the Board of

14  Police Commissioners as well as the St. Louis City Counselor's

15  Office have been having discussions with the State or so we

16  believe about how to resolve it and who is responsible here

17  but --

18        THE COURT:  And that statute is the statute that

19  grants authority and control over the St. Louis Metropolitan

20  Police Department to the State of Missouri in essence,

21  correct, that you reference?

22        MR. WHITE:  Yes, Your Honor.

23        THE COURT:  Uh-huh, go ahead.

24        MR. WHITE:  And as a part of that, the Board of

25  Police Commissioners as well as the City Counselor's Office

4

1   have not given us the information we would need in order to go

2   forward.  Again, there's been a lack of communication and a

3   lack of clarity as to whether or not we have the authority as

4   defense counsel to continue with discovery, retain experts,

5   and otherwise participate in the defense.  And that, Your

6   Honor, is a reason to vacate the scheduling order, extend the

7   deadlines, and await further clarification from those parties.

8          THE COURT:  So let me ask you this, Mr. White.  This

9   confusion, if you will, about who has the authority to do what

10  with regard to cases such as this, is that an issue limited to

11  cases that were already pending at the time that the State

12  took over or is it an issue for all cases, those pending and

13  those new cases that have been filed or will be filed or could

14  be filed post takeover by the State of Missouri?

15         MR. WHITE:  Based on the lack of communication from

16  the Board of Police Commissioners as well as the City in this

17  instance, I'm not sure as defense counsel as I stand here

18  before you today.  I simply do not have that information.

19         THE COURT:  So what's the source of this asserted

20  confusion?  You know, there is a reference to the *Clark* case,

21  and correct me if I'm wrong, but I thought that they did

22  something upstairs already with respect to that case.  Didn't

23  they do something with that?

24         MR. WHITE:  Yes, Your Honor.  The appeal was denied,

25  but it did not resolve the confusion here between those

5

1    parties I mentioned previously, the Board of Police

2    Commissioners and the City of St. Louis.

3          THE COURT:  And what was the basis of the appeal?

4          MR. WHITE:  The basis of the appeal in *Clark*?

5          THE COURT:  Uh-huh.

6          MR. WHITE:  Your Honor, I don't want to misrepresent

7    the basis of the appeal, but I am happy the check and followup

8    with the Court as soon as possible.

9          THE COURT:  All right.  Well, and when I say basis of

10   appeal, I merely mean what happened in *Clark* that caused the

11   appellant or putative appellant in that case to seek an appeal

12   of that judge's order?  What did the judge order in that case?

13         MR. WHITE:  Your Honor, again I don't want to

14   misstate the scope and impetus for the appeal; however, I

15   believe it was confusion on the part of the City of St. Louis

16   and they were seeking clarification about that.

17         THE COURT:  Okay.  So you see, there is a limit here,

18   Mr. White, and this, of course, is applicable to

19   Ms. Freudenberger.  You know, there are a number of cases that

20   are kicking around.  I anticipate because of the nature of the

21   types of cases, there will be other cases kicking around.

22   This confusion about who is responsible for what, when, and

23   how has been kicking around, and what I hear, subject to

24   hearing what the plaintiffs say, is there is no light at the

25   end of the tunnel as to when this confusion will be resolved.

6

1          Now, my concern is whether there is any real

2    legitimate discussions between the interested parties in

3    resolving this confusion or if this confusion is one of those

4    kind of things that can just kind of linger and linger and

5    linger, and, you know, over time when things linger, cases get

6    stale, witnesses get stale, witnesses leave, the evidence gets

7    rusty, memories fail.  We don't want to get into that

8    situation with any cases.

9          And I've got to say that from a jurist's perspective,

10   it's a great quandary as to whenever this statute was being

11   contemplated and the process that is set out in the statute

12   for control is being contemplated that nobody thought, nobody,

13   whether it's in the City of St. Louis or in the State of

14   Missouri in Jefferson City, all those people there and all

15   those leaders over in City Hall, that nobody ever thought, oh,

16   wait, there are these civil cases that crop up from time to

17   time involving police officers, police departments, Board of

18   Police Commissioners, and, you know, there are going to be

19   lawyers that are going to have to be representing the City of

20   St. Louis and police officers and Board of Police

21   Commissioners and, well, frankly, who are those lawyers going

22   to be.  Is it going to be the lawyers in the City Counselor's

23   Office, is it going to be the City of St. Louis, and is there

24   going to be some vehicle in the event of a judgment contrary

25   to the interest of the City of St. Louis/State of Missouri

7

1    that's going to have to be considered and ultimately maybe

2    paid subject to appeal and then what's the process and

3    mechanism for resolving all of those things?

4          I mean, there are a lot of brilliant minds involved

5    with this whole process, and it just, well, for less of a

6    better term blows my mind that nobody considered this so that

7    you, Mr. White, wouldn't have to be here talking about this.

8    We'd already know the answer.  And the plaintiffs through

9    Ms. Fruedenberger wouldn't have to be here on this because

10   we'd already know the answers, and *Clark* never would have

11   existed because we would already know the answers and we would

12   just be able to proceed along with the prosecution and defense

13   of this case, the *Clark* case, and other similar cases that are

14   already in existence and may be coming down the pike.  Well,

15   not "may be".  There will be other cases coming down the pike

16   because that's just how that works.

17         So how do we resolve that?  I mean, I understand your

18   dilemma, all right?  And, of course, I still have to hear from

19   the plaintiffs on their opposition of this and wanting to

20   proceed further with depositions, etc., etc., but I just want

21   to get this out there that it's a quandary, it's a problem,

22   it's a systemic problem for these types of circumstances that

23   statutory action causes without consideration and detailed

24   thought.  So it's hard for me to imagine how that can happen

25   because as a jurist, you know, we're obliged to consider all

8

1    aspects regarding a case that the facts present and all law

2    and make a decision consistent with that.  Part of that

3    decision making has to do with looking down the road to see

4    what that's going to look like necessarily.  That's not the

5    end game, but it's something that you have to think about.

6    So, you know, when people are enacting laws, you would think

7    that that's stuff that they think about, too, so that this

8    wouldn't happen.  I'm confused.

9            MR. WHITE:  It's an unfortunate situation.

10           THE COURT:  But not dazed and confused like Led

11   Zeppelin, just confused.

12           MR. WHITE:  Understood.

13           THE COURT:  That's a musical joke, reference, folks.

14   No rock 'n' roll people here, but anyhow.  You know what I'm

15   sayin'?

16           MR. WHITE:  Yes, Your Honor.

17           THE COURT:  I'm not trying to put you on the spot.

18   It's just a mess.

19           MR. WHITE:  Agreed.

20           THE COURT:  Okay.  Anything else?

21           MR. WHITE:  Nothing further at this point, Your

22   Honor.

23           THE COURT:  Ms. Freudenberger.  And don't make your

24   argument assuming that you're already ahead of the game

25   because I'm just kind of like getting stuff out of my system.

9

1    Go ahead.

2           MS. FREUDENBERGER:  I wouldn't presume to, Your

3    Honor.

4           THE COURT:  Thank you.

5           MS. FREUDENBERGER:  So, Your Honor, I understand the

6    quandary that Mr. White is in if he is not getting clear

7    communication from the City Counselor's Office, and that's

8    certainly not his fault, but the situation that we're in

9    insofar as it impacts this litigation is actually not new or

10   novel at all.  If I can back up and just give one minute of

11   background procedurally.

12          THE COURT:  Uh-huh.

13          MS. FREUDENBERGER:  We filed this case in January of

14   2024.

15          THE COURT:  Yeah, it's been around for a little bit.

16          MS. FREUDENBERGER:  The City Counselor's Office

17   answered, prepared the answer, and participated and has

18   participated in the litigation ever since, participated at

19   depositions, questioned witnesses.  We proceeded with

20   discovery in this case with the understanding that the

21   discovery cut-off date was a firm February 11th of 2026.

22   Without issue, we proceeded with discovery up until March 2025

23   when the law was passed.  We proceeded thereafter.  We went to

24   a mediation in October.  The mediation unfortunately was not

25   successful.  Thereafter, we conferred with the City's counsel.

10

1    Along the way, I believe in December of 2024, they retained

2    outside counsel who worked -- from Nathan and Kamionski who

3    worked collaboratively with the City Counselor's Office, and

4    we were exchanging deposition dates in October of this year

5    when the City suddenly filed --

6            THE COURT:  You mean October of --

7            MS. FREUDENBERGER:  Two months ago.  I'm sorry, I

8    apologize, Your Honor.  It's a January problem for me.

9            THE COURT:  October of last year.

10           MS. FREUDENBERGER:  October of last year.  When the

11   City suddenly filed the motion for a stay on the speculative

12   premise that maybe the *Clark* appeal would get taken by the

13   Eighth Circuit and maybe the Eighth Circuit would make a

14   decision that changed the landscape.  That, of course, didn't

15   happen, and subsequently our understanding once

16   the *Clark* appeal -- once the Eighth Circuit declined to hear

17   the appeal is that we would proceed with discovery.  Instead,

18   the City then filed a motion asking for identical relief,

19   asking this Court to simply suspend all deadlines and give

20   them a 90-day extension presumably because they waited until

21   the day their expert reports were due to make the motion.

22   They didn't file a motion to extend the expert deadlines.

23   They simply asked the Court for identical relief but premised

24   on this confusion.  Your Honor denied that motion, and

25   nevertheless, the City continued asserting the position that

11

1    they wouldn't participate in the litigation at all, which is

2    their current position.

3            Now, they haven't provided any legal authority for a

4    municipality's ability to ignore a Court's scheduling order

5    because they believed that it may come to pass down the line

6    that they won't be responsible for litigation costs, and they

7    have -- although they styled the relief they are requesting

8    now as an additional 30 days, in fact, they are asking for

9    exactly what this Court has already denied, which is a 90-day

10   extension from the date of their expert disclosure deadline

11   to -- their prior request would have put their deadline at

12   March for this one remaining expert they seek to propound out

13   of time at March 11th.  Now they want it to be March 13th.

14           But, Your Honor, I know that this law has caused and

15   does cause an enormous amount of confusion, and I understand

16   that that is out there, but insofar as it applies to this

17   case, there is nothing unusual about not being certain whether

18   a party is going to have to bear their own costs or will be

19   reimbursed for them.  That happens, of course, all the time in

20   litigation.  It happens in the insurance context.  It happens

21   in cases like this where we had an identical case back in -- I

22   believe we settled in 2018 -- in the George Allen matter.  At

23   that time, there was uncertainty over whether the State or the

24   City would be responsible for the Board's debts, and what

25   happened in that case is the City and the State filed dec

12

1   actions in state court which proceeded along with the

2   litigation.

3           The City isn't saying here and it wouldn't be grounds

4   for the relief they seek even if they were, but they are not

5   even saying we can't afford to litigate the case.  What they

6   are saying is we want to stop litigating the case, we refuse

7   to participate because there is a chance that down the line,

8   someone else may have to reimburse us for our costs, so we

9   don't want to pay them now.  That's their position.  They are

10  free to continue -- they were the named party.  We named the

11  City of St. Louis and various individual officers.  The City

12  of St. Louis is still the party in the case.  Lawyers for the

13  City of St. Louis from the City Counselor's Office are entered

14  in the case, are here in the courtroom now, and there is no

15  reason they can't litigate the case.

16          The problem from our perspective is that we have put

17  off depositions -- we have put off depositions on the

18  assumption that the motion to stay, the initial motion to

19  stay, due to the *Clark* appeal would resolve itself, which it

20  did because the Eighth Circuit didn't hear the appeal, but now

21  we have put off -- we have agreed to put off depositions to

22  avoid filing a motion like this motion to compel twice.  We

23  have a February 11th discovery cut-off.  We have five

24  depositions left to take.  We had scheduled them for today,

25  tomorrow, and the next day.  The witness who we subpoenaed

13

1    tomorrow, Dwight Warren, the trial prosecutor, called me

2    yesterday and said I don't understand, you sent an e-mail

3    confirming, but the lawyers for the City have told me I don't

4    need to come and I can go to my doctor's appointment tomorrow.

5            We have already experienced serious prejudice.  It is

6    a very serious case.  Mr. Johnson, who is here in court today,

7    has been declared innocent by the courts.  The record of

8    misconduct here is stunning.  We have key witnesses have died.

9    Defendants are getting older.  There is a very sick, very

10   critical witness.  We need to be able to finish the

11   litigation, and if the City is -- the City has really in our

12   view taken a gamble by ignoring deadlines, ignoring the

13   scheduling order, deciding not to go out and pay for experts

14   on the deadline by which they would have had to do so, and

15   they are free to make that gamble, but they can't not show up

16   to depositions and participate.  And if there is an issue with

17   paying their outside counsel they hired, the City Solicitor's

18   Office is entered in the case, is familiar with the case, as I

19   said has participated in the litigation, but it can't be to

20   Mr. Johnson, the civil rights plaintiff's, detriment that the

21   City is confused about funding obligations.

22           They are the defendant in the case.  They have always

23   been the defendant in the case.  This isn't even a case

24   against the Police Board.  Our *Monell* claim is a claim

25   directly against the City.  And so there is no -- they have

14

1    not tried to meet the standard.  They have not cited any law.

2    They have not addressed the prejudice to Mr. Johnson from the

3    relief they request, which is serious, and we are at the point

4    now where we have planned -- we have set trials in other

5    cases, we have scheduled important litigation matters in other

6    cases, you know, on the assumption that the discovery would

7    close here and we would be able to finish our work, litigate

8    in the case, by mid February.

9         So the prejudice here if the City is granted another

10   extension to our side is going to be extraordinary, and on the

11   other side, what you have is the City saying we are not going

12   to participate in this important case because somebody else

13   may have to pay, and, you know, I don't -- I'm not in the

14   rooms where these conversations are happening, Your Honor, but

15   it's hard to see given -- everybody understands that this is a

16   very serious case that is not going to just disappear without

17   somebody paying a large amount of money.  Whoever ends up

18   paying that amount of money, we have to be -- we have to be

19   able to litigate our case.  And as I said, we have all been

20   down this road before and there were no problems then, and the

21   matter was just resolved in state court as the law dictates it

22   should be.

23        So, you know, all I can say is they have not met the

24   standard, they have not attempted to meet the standard, and

25   they have not provided any legal support for their position,

15

1   and at this point, it would severely prejudice our client to

2   alter the scheduling order in any way.

3            THE COURT:  Thank you.

4            Mr. White.

5            MS. FREUDENBERGER:  Thank you.

6            MR. WHITE:  Your Honor, as my opposing counsel said,

7   this is a very serious case.

8            THE COURT:  It is.

9            MR. WHITE:  But the issues presented as it relates to

10  the obligation to fund these cases and the litigation behind

11  them, it's serious as well.  Now, plaintiff makes a lot out of

12  the issue of money, but even deeper than money here is the

13  issue of authority.  If defense counsel cannot have

14  communications with our clients about whether or not we have

15  authority -- for example, the authority to retain experts;

16  another example, the authority to settle and in what amounts

17  and when -- there is no way for us to proceed with preparing a

18  defense, completing discovery, and doing the other myriad of

19  things necessary as it relates to our responsibility as

20  defense counsel.

21            So this Court, if nothing else, should extend the

22  deadline for discovery by 30 days to allow us to complete

23  discovery.  As counsel mentioned, the plaintiff spent multiple

24  decades in jail, and there are witnesses who are sick, but 30

25  days is not going to prevent plaintiff from completing his

16

1   case and otherwise prosecuting its claim.  And for this

2   reason, Your Honor, this Court should grant defendant's

3   motion.

4         THE COURT:  In line with what Ms. Freudenberger

5   indicated as it relates to today, when was or when would the

6   first deposition be set for?

7         MR. WHITE:  When would the first deposition be set

8   for?

9         THE COURT:  Well, you mentioned some dates,

10  Ms. Freudenberger, about depo dates I thought.

11        MS. FREUDENBERGER:  Yes, Your Honor.

12        THE COURT:  If not specifically, generally speaking.

13        MS. FREUDENBERGER:  We noticed -- so we are almost

14  done with our depositions.  We noticed deposition -- we have a

15  deposition notice for tomorrow and we have a deposition notice

16  for the next day.  We have a witness who is waiting for us to

17  call him and tell him whether to come to his deposition

18  tomorrow.

19        THE COURT:  And who is that?

20        MS. FREUDENBERGER:  That is Dwight Warren, the

21  prosecutor.  And then on Thursday, we noticed Detective

22  Bailey, who is a defendant police officer in the case.

23        THE COURT:  So, Mr. White, what would be different 30

24  days from today?

25        MR. WHITE:  30 days from today, Your Honor, we would

17

1   have been compelled to proceed with the defense whether we

2   have authority or not by this Court, and we would have

3   additional time to prepare and actually identify and produce

4   an expert witness on police practices.

5           THE COURT:  Yes?

6           MS. FREUDENBERGER:  May I, Your Honor?

7           THE COURT:  Yeah.

8           MS. FREUDENBERGER:  Your Honor, the defense deadline

9   for retaining and complying with expert disclosure

10  requirements has passed.  They did not seek an extension from

11  this Court to get an expert when they would have had to have

12  done so, so there is no -- there is no -- I understand now

13  they are saying we want one expert, a police practices expert

14  and we need 30 days to get one, but if they wanted -- if that

15  was the issue and they wanted to make that request, the time

16  to do it was prior to their deadline on December 10th of last

17  year.

18          So there also is a serious practical problem.  We --

19  so I don't want to bore the Court with our schedules, but

20  there are no lawyers to litigate on their timeline.

21          THE COURT:  This is a no boredom zone.  There is

22  nothing boring about anything that we do in a court of law.

23  Well, there might be for some people, but they're not real.

24          MS. FREUDENBERGER:  So, Your Honor, we have a real

25  practical problem.  My colleague and I flew in from New York

18

 1   City to take the depositions tomorrow and the next day.  We

 2   have from my office, myself and every lawyer from my office on

 3   our team familiar with the case has a major multi-week civil

 4   wrongful conviction trial beginning March 2nd in federal court

 5   in Newark.  I have two big depositions scheduled next week in

 6   Philadelphia in another very serious wrongful conviction case

 7   with, in fact, the same law firm and two depositions the

 8   following week and then this civil trial starting March 2nd

 9   that I am lead counsel on with a plaintiff who spent 24 years

10   in prison and has a case that's been pending since 2019.

11        Ms. Runnels also has a number of -- is at a very

12   small firm and has a number of serious criminal matters.  She

13   is not available to take depositions.  We have scheduled

14   matters in other cases.  I then have a two-week -- or I should

15   say a 12-day international prepaid vacation that I don't know

16   when the last time I have done that is following this trial

17   and then another very serious civil rights wrongful conviction

18   trial in New Haven beginning at the end of April.

19        So we have actually scheduled around the schedule and

20   set trials around the schedule, Your Honor's schedule, in this

21   matter.  So even if the Court were to belatedly, although the

22   defense ought to have moved earlier, even if the Court were to

23   belatedly say yes, you may get your one expert in 30 days,

24   that actually is practically not workable for us.  We are

25   going to be like in the middle of other serious trials.  We

19

1   can't stop and take expert depositions or determine whether we

2   need to get a rebuttal expert report.  It's not practical.

3   And what I have heard is, well, if the Court orders it, then

4   we have to go forward.  Well, the Court's schedule is in

5   place.

6           THE COURT:  What schedule are you talking about is

7   the Court's schedule?

8           MS. FREUDENBERGER:  Oh, I am talking about the

9   Court's scheduling order.

10          THE COURT:  You mean the case management order?

11          MS. FREUDENBERGER:  The case management order,

12   exactly.

13          THE COURT:  Well, where did those dates come from

14   that are in that order?

15          MS. FREUDENBERGER:  From Your Honor.

16          THE COURT:  But where did they originally come from?

17          MS. FREUDENBERGER:  We actually had jointly asked --

18          THE COURT:  You jointly did those dates.  I approved

19   them.  I didn't create those dates.  Had I created those

20   dates, they would have been different.  So what you refer to

21   as the Court's scheduling order is really your scheduling

22   order as one of the parties that the parties agreed to that I

23   looked at my calendar and said that will fit my calender in

24   relation to all the other cases that I have; but for that,

25   that order would be different.  So don't say that it's my

1  scheduling order.  I merely approved what you guys came up

2  with by saying "so ordered".  It's your scheduling order.  The

3  order that you created is the time frame that you established

4  as a time frame for resolving this case one way or another as

5  that relates to, A, identification of experts and any and all

6  other discovery, filing of dispositive motions and rulings of

7  those, and the trial date.

8        So what you have done, as in any other case, is that

9  you have locked yourself into dates that you said were dates

10 that were workable for you and requested the Court -- that

11 would be me in this instance as the judge -- to sign off on.

12 So don't say it is my scheduling order because that doesn't

13 get you off the hook.  You said, So if you go against that,

14 Judge, then you are going against your order.  No, I'm not

15 going against my order.  I would be making a ruling contrary

16 to what the parties have agreed to for the sake of a better

17 sense of justice.

18       Now, when you lay out what you need to do and what

19 you have to do in those other cases, that's not my problem.

20 I'm not the lawyer in any of those cases.  I am not you.  You

21 are the one again that set those schedules and requested some

22 judge someplace to agree to that, okay?  You set that up

23 yourself, and the parties on the other side of those cases,

24 your adversaries, set that up themselves, so that is not my

25 problem.  It is not my problem anymore than it is the problem

21

1    of the defense in this case for this confusion that the State

2    of Missouri has created and anything rolling out from that as

3    it might relate to the City of St. Louis.  Fundamentally and

4    the bottom line, and I have to agree with you on this point,

5    whatever the City has done and wherever the City was before as

6    of now is the same place they are in.  The only issue now is

7    what do we do with things relating to conclusion of discovery,

8    depositions, and getting an expert, okay?

9           MS. FREUDENBERGER:  I understand, Your Honor.

10          THE COURT:  All of those things are open for a

11   judge -- again, that would be me -- to decide what the right,

12   appropriate, and just thing would be considering all of the

13   attendant circumstances in this case, not your case in New

14   York, not your case in wherever that is, or your case wherever

15   it is, or your case wherever it is because I don't care about

16   any of those other cases.  They are not mine.  I care about

17   this case.  What goes on in those other cases, that's for

18   those judges to deal with, all right?  And I don't know any of

19   those judges as far as I know, all right?  If it's a problem,

20   I would anticipate that either you or Mr. White would contact

21   those judges and say, you know, Judge Autrey is creating a

22   problem for me, can you talk to him, and maybe, maybe not, one

23   or more of those judges will call me and we will talk about

24   it.

25          That rarely happens, especially in federal court.  It

22

1   does happen in state court because having been a state court

2   judge, I've been in a situation where a judge from another

3   jurisdiction has called up and said, hey, Henry, I have got

4   this case with Judge White or Judge Freudenberger, okay, it

5   was set here, but you are doing this, what's going on, and

6   then we would talk about it, and if what he or she says makes

7   sense, I might yield.  If what he or she says doesn't make

8   sense in relation to what my perspective is on my docket, then

9   I won't yield and we will go with what Judge Autrey -- that

10  would be me -- says, which is kind of where we are here.

11         I understand your situation, but again, that's not my

12  problem.  This case, this one case, this case right here,

13  Lamar Allan Johnson versus City of St. Louis, et al., is my

14  problem.  I don't know anything about your other cases.  I

15  don't know anything about his other cases either.  I know

16  something about this case, and I know that it's been stalled,

17  and I also know that it has to move along for everybody.  And

18  to accomplish that is not one person, one entity, getting his

19  or her desire, but something that works for everybody to

20  achieve ultimately a disposition for both sides, okay?  So

21  don't talk to me about your other problems because they are

22  not relevant, all right?

23         Thank you.  Same for you, Mr. White.  Your other

24  problems are not relevant.

25         MR. WHITE:  Understood.

23

```
 1            THE COURT:  So this is what I'm going to do.  You are
 2  going to get your depos.
 3            MS. FREUDENBERGER:  Thank you.
 4            THE COURT:  The City is going to have to do what they
 5  have to do in relation to those depos, all right?  I
 6  understand the issue of the lateness in getting their expert.
 7  That's not so much a big problem in this case because of the
 8  particular nuances created by entities beyond the control of
 9  all of us in this case, so you'll get some time to find that
10  expert, but it's not going to be 30 days.
11            MR. WHITE:  Understood.
12            THE COURT:  Because I know that you are recently in,
13  and I've got to feel that somebody was thinking about this
14  before you got in, Mr. White, and if they weren't, they should
15  have been, so they need to think quickly to advise you in that
16  regard so that you can do what you need to do and the City can
17  do what they need to do, all right?
18            As far as the depos go, I'm hard pressed under the
19  circumstances to require that Mr. White -- not Mr. White,
20  Mr. Warren go forward with the deposition tomorrow as your
21  deposed witness.  That's problematic.  It's problematic for
22  both sides.  It's also problematic for the witness if he has a
23  doctor's appointment as he indicated.  Doctor's appointments
24  are very important.  If you had a doctor's appointment, ma'am,
25  you'd get a break so you could attend your appointment.  At
```

24

1   least from me you would.  Some other judges, I can't talk for

2   other judges, I can only talk for me because medical stuff is

3   important.  So you all will have to renegotiate the deposition

4   time for Mr. Warren.  The deposition for Thursday, and who was

5   that?

6         MS. FREUDENBERGER:  That is Defendant Clyde Bailey,

7   Your Honor.

8         THE COURT:  Uh-huh.  And as far as we know, that

9   defendant doesn't have any medical appointments or anything

10  like that?

11        MS. FREUDENBERGER:  As far as I know, Your Honor.

12        THE COURT:  And would you be doing that deposition,

13  Mr. White?

14        MR. WHITE:  That decision hasn't been made yet, Your

15  Honor, but as I've recently entered, I believe it will likely

16  be me and I'd respectfully request additional time to prepare

17  if that's on the table.

18        THE COURT:  All right.  What time is that deposition

19  set for?

20        MS. FREUDENBERGER:  I believe it's set for 9:30 on

21  Thursday, Your Honor.

22        THE COURT:  And in setting that, how long did you

23  anticipate reasonably that that deposition would take?

24        MS. FREUDENBERGER:  He is a defendant, Your Honor,

25  who was involved in multiple aspects of the investigation, so

25

1    I would expect it to take all day.

2            THE COURT:  And there weren't any depositions set for

3    Friday; correct?

4            MS. FREUDENBERGER:  There are not, Your Honor.

5            THE COURT:  All right.  When was the next deposition

6    after Mr. Bailey?

7            MS. FREUDENBERGER:  The next deposition is set for

8    the 20th.

9            THE COURT:  And that is?

10           MS. FREUDENBERGER:  That is of Kim Norman who is a

11   third party witness.

12           THE COURT:  So here's what we're going to do.

13           MS. FREUDENBERGER:  Your Honor, I ask very

14   reluctantly because I injected the issue of Mr. Warren's

15   doctor appointment, I do want to say that he told me that it

16   was not a problem to cancel his doctor's appointment.  So we

17   did choose the date with him.  We asked him if he was

18   available on that date and he said that he was.  If there is

19   any way to go forward with that deposition tomorrow, we'd

20   appreciate it.

21           THE COURT:  So here's what I think.  I think that it

22   would make sense for the parties to discuss a different date

23   for Mr. Warren, and probably that date should be Thursday and

24   all the other dates would be moved forward to the advantage of

25   everybody.  That's my suggestion.

26

1          Any questions about that, Mr. White?

2          MR. WHITE:  Yes, Your Honor.  So are you saying that

3   you'd like us to revisit the dates and push them forward to

4   the next agreeable dates that we could find?

5          THE COURT:  And the first of which would be Thursday.

6          MR. WHITE:  Thursday of Warren; right?

7          THE COURT:  Okay.  Anything else?

8          MR. WHITE:  Nothing further from me, Your Honor.

9          THE COURT:  Ms. Freudenberger?

10         MS. FREUDENBERGER:  Just so I understand, Your Honor,

11  is the close of fact discovery staying the same but the

12  defendants have -- I just want to make sure I understand the

13  ruling.  My understanding is the close of fact discovery

14  remains February 11th, but the defendants have additional time

15  to obtain their expert on police practices.  Is that accurate?

16         THE COURT:  Well, they have additional time to secure

17  their expert in police practices.  The close of discovery,

18  fact discovery, is something that you guys need to revisit.

19  The trial setting is still going to be the trial setting as is

20  currently set subject to and in agreement by the parties or a

21  motion by one party or another for good cause to change that

22  date because quite frankly, that's the only date that I care

23  about as the judge.  All those other dates aren't for me.  All

24  those dates are for the parties.  You can change them by

25  agreement, you can change them by joint motion, you can change

27

1  them by a motion with opposition and have a hearing on it, but

2  ultimately the only date that is of any consequence to me as a

3  judge is the trial date, and that date stays the same as

4  currently set again subject to a motion for good cause to

5  change it.

6      MS. FREUDENBERGER:  And, Your Honor, the trial date

7  is June of this year.

8      THE COURT:  Okay.

9      MS. FREUDENBERGER:  Is there a window that the Court

10 requires between the close of discovery and the trial date in

11 June?

12     THE COURT:  That window is whenever the party or

13 parties conclude that there is a basis for a continuance.

14     MS. FREUDENBERGER:  I'm sorry, I didn't phrase my

15 question artfully.  My question is like presumably given our

16 trial date in June -- I think it's June 15th, although I am

17 not sure.  Yeah, so we have a June 15th trial date.

18 Presumably the Court would not be okay with discovery closing

19 June 14th.  Is there a certain amount of time that the Court

20 requires between the trial date and the close of fact

21 discovery?  If we are going back to re-negotiate the close of

22 discovery, is there a window that the Court needs?

23     THE COURT:  For the sake of clarity, let me say this

24 again.  The only date I care about is the trial date.  It's

25 the only date that's important to me.  When discovery closes,

28

1  that's an issue for the parties.  That's a preparation issue,

2  it's a strategy issue, it's not important to me.  So if

3  discovery closes on the 14th, if everybody's got their

4  discovery on the 14th and you are ready to go to trial, fine,

5  I don't care, as long as you are ready to go to trial on the

6  15th.  If you think you need more time to do further discovery

7  or to close discovery or to take additional depositions, then

8  somebody has to file a motion, all right?  I don't dictate

9  when you finish your discovery.  That's between the parties.

10        Yes, I know the rule lays all that stuff out, but

11  that doesn't mean anything for me.  It means something for the

12  parties because I'm not down there doing any of that stuff.

13  I'm not out in the streets beating on the concrete looking for

14  witnesses.  I am not reading reports.  I'm not looking for

15  experts.  I'm not turning over anything to the other side.

16  You guys are.  So how you do that pragmatically speaking is

17  entirely up to you.  You know, how some other judge treats it

18  is how some other judge treats it.  How I treat it is it's not

19  my issue unless somebody makes it an issue, and it's only an

20  issue for me if somebody files a motion saying

21  neener-neener-neener, Judge, they filed this stuff late, they

22  can't use it, or a neener-neener-neener, Judge, I need more

23  time because my witness disappeared and I think I found him,

24  but I am not sure, I need to look for him, so in the interest

25  of justice, blah, blah, blah, blah, I need more time; right?

29

```
 1              That's how I do it.  Is that old school?  Yes, it is.
 2    You know why?  Because the landscape of trial and trial
 3    settings change.  It's fluid.  It's not written in stone.
 4    It's open to modification, amendment, and change, or vacation
 5    on any given day at any given time.  I know that mostly
 6    because I have tried cases.  There are judges who haven't
 7    tried cases who don't get that.  That's their problem.  It's
 8    not mine.  All right?
 9              MS. FREUDENBERGER:  Understood, Your Honor.  Thank
10    you.
11              THE COURT:  Anything else?
12              MR. WHITE:  No, Your Honor.
13              THE COURT:  Thank you.  That concludes this
14    proceeding -- almost.
15              MS. RUNNELS:  Your Honor, one point of clarification.
16              THE COURT:  Yes.
17              MS. RUNNELS:  I know you granted additional time to
18    retain a police practices expert.  Was there a date that the
19    Court has in mind for their deadline?
20              THE COURT:  Well, I think he had asked for -- 30
21    days?
22              MR. WHITE:  Thirty days.
23              THE COURT:  And in light of what we are doing with
24    the depositions, that's just not tenable, and I think I had
25    referenced 15 days or ten days earlier, so that's where we
```

30

1   are.

2           MS. RUNNELS:  Thank you.

3           THE COURT:  Fifteen days at the outside.

4           MR. WHITE:  Fifteen days from today?

5           THE COURT:  From today.

6           MR. WHITE:  Okay.

7           THE COURT:  Anything else?

8           MR. WHITE:  No, Your Honor.

9           MS. FREUDENBERGER:  No, Your Honor.  Thank you.

10          THE COURT:  All right.  That concludes this

11  proceeding.  We will be in recess.

12                  **(PROCEEDINGS CONCLUDED AT 2:50 P.M.)**

31

<u>CERTIFICATE</u>

1

2

3    I, Angela K. Daley, Registered Merit Reporter and

4  Certified Realtime Reporter, hereby certify that I am a duly

5  appointed Official Court Reporter of the United States

6  District Court for the Eastern District of Missouri.

7    I further certify that the foregoing is a true and

8  accurate transcript of the proceedings held in the

9  above-entitled case and that said transcript is a true and

10  correct transcription of my stenographic notes.

11    I further certify that this transcript contains

12  pages 1 through 30 inclusive and that this reporter takes no

13  responsibility for missing or damaged pages of this transcript

14  when same transcript is copied by any party other than this

15  reporter.

16    Dated at St. Louis, Missouri, this 15th day of January,

17  2026.

18

19

20    _____

       /S/Angela K. Daley
21     Angela K. Daley, CSR, RMR, FCRR, CRR
       Official Court Reporter
22

23

24

25