UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAMAR ALLAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-00087-HEA |
| | ) | |
| CITY OF ST. LOUIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO STRIKE THE DEPOSITION OF DEFENDANT
GARY STITTUM AS A SANCTION FOR PLAINTIFF'S COUNSEL'S
DEPOSITION MISCONDUCT**

Defendants City of St. Louis, Joseph Nickerson, Clyde Bailey, Ronald Jackson, Gary Stittum, Jeffrey Crawford, Robert Oldani, Joseph Burgoon, and Christina Ross as Special Administrator of the Estate of Ralph Campbell (collectively "Defendants"), by and through their undersigned counsel, Nathan & Kamionski LLP, pursuant to Federal Rule of Civil Procedure 30(d)(2) and 37, and the Court's inherent authority to manage its proceedings and control the conduct of those appearing before it, respectfully move this Court for an order striking the deposition of Defendant Gary Stittum as an appropriate sanction for the grossly inappropriate, unprofessional, and harassing behavior exhibited by Plaintiff's counsel during the deposition. In further support of this Motion, Defendants state as follows:

## INTRODUCTION

Attorneys are expected to conduct themselves in a professional manner during depositions, treating all participants with dignity, civility, and courtesy. However, the deposition of Defendant Gary Stittum ("Mr. Stittum") was marred by the pervasive misconduct of counsel for Plaintiff Lamar Johnson. Throughout the deposition, Plaintiff's counsel engaged in a pattern of harassment,

intimidation, and abuse directed at both the deponent, Mr. Stittum, and defense counsel, Attorney Ronnie White. This conduct included, but was not limited to: repeatedly cutting off Mr. Stittum during his testimony; laughing at Mr. Stittum's responses and objections made by defense counsel; interrupting and cutting off defense counsel when attempting to make objections; arguing with defense counsel throughout the deposition; repeatedly asking questions that Mr. Stittum had already answered; attempting to elicit information protected by the attorney-client privilege; showing Mr. Stittum a picture of his late wife and then laughing when Mr. Stittum stated that he took offense to the picture being shown at his deposition; and engaging in yelling and overall hostile behavior toward both Mr. Stittum and Mr. White.

This misconduct rendered the deposition proceedings fundamentally unfair and prevented Mr. Stittum from providing testimony in the type of atmosphere required by the Federal Rules of Civil Procedure: a dignified and professional atmosphere that simulates the type of questioning that would occur in a courtroom. Conduct that would not be permissible in the courtroom during the questioning of a witness should not be permissible at a deposition. Plaintiff's counsel's conduct during Mr. Stittum's deposition violated these fundamental principles and constitutes sanctionable misconduct under Rules 30(d)(2) and 37. As the Court will see from the evidence and authority cited herein, the pattern of misconduct exhibited by Plaintiff's counsel warrants the serious sanction of striking Mr. Stittum's deposition.

## RELEVANT BACKGROUND

This action arises from Plaintiff Lamar Johnson's claims alleging that he was wrongfully prosecuted and convicted for the 1994 murder of Markus Boyd. Defendant Gary Stittum was, at all times relevant to this case, an officer of the St. Louis Metropolitan Police Department who was assigned as a detective with the Homicide Unit at the time of the investigation into the Boyd

murder. Plaintiff alleges that Defendant Stittum, and other defendant officers, engaged in misconduct in connection with that investigation, including the alleged fabrication of eyewitness James "Greg" Elking's live lineup identification of Lamar Johnson as the individual he saw shoot and kill Markus Boyd. Mr. Stittum denies these allegations.

On January 27, 2026, Mr. Stittum appeared for his noticed deposition. From the outset of the deposition, Plaintiff's counsel engaged in a pattern of misconduct that fundamentally undermined the integrity of the proceedings. At the close of the deposition, defense counsel summarized the misconduct on the record:

> "I would like the record to reflect opposing counsel Ms. Green's unprofessional behavior throughout the entirety of this deposition, including but not limited to her repeatedly harassing the witness, laughing in response to the witness's statements during the deposition, also laughing at my objections, repeatedly talking over me, talking over the witness, speaking over the Court Reporter, preventing my ability to appropriately make a record."

(Deposition Transcript of Gary Sttitum, attached hereto as Ex.1, 379:23-380:11). The specific instances of misconduct are detailed below.

### A. *Plaintiff's Counsel Repeatedly Cuts Off the Witness During His Deposition*

Throughout the deposition, Plaintiff's Counsel repeatedly interrupted and cut off Mr. Stittum while he was in the process of answering questions. On numerous occasions, Mr. Stittum attempted to provide a complete and accurate answer to the question posed, only to be interrupted mid-sentence by Plaintiff's counsel, who would either demand a "yes" or "no" answer, move on to a different question, or engage in argumentative exchanges with the witness.

The severity of this conduct was such that the court reporter was forced to intervene on multiple occasions. At one point, the court reporter stated: "I'm sorry, I'm sorry. You cut him off." (Ex. 1 at 175:11-14). At another point, when Plaintiff's counsel spoke over Mr. Stittum while he attempted to answer, the court reporter noted: "I'm sorry, I didn't get the answer. There was over-

3

speak." (*Id*. at 149:10-12). This conduct prevented Mr. Stittum from fully and fairly answering the questions posed to him and created an environment of intimidation rather than one conducive to the fair examination of the deponent.

### B. Plaintiff's Counsel Laughed at the Witness's Responses and at Defense Counsel's Objections

In an extraordinary display of unprofessionalism, Plaintiff's counsel laughed at Mr. Stittum's testimony on multiple occasions throughout the deposition. When defense counsel noted on the record that "counsel is laughing in response to my client's responses," Plaintiff's counsel responded: "I laughed in response to his making a face saying do you know what and rolling his eyes. I was laughing because I thought it was funny." (Ex. 1 at 205:24-206:9). There was nothing funny about Mr. Stittum's response or facial expression; this was simply an attempt to harass the witness.

Later, when Mr. White again stated for the record that "counsel is laughing at the witness's responses. That is harassing and entirely inappropriate for a deposition," Plaintiff's counsel acknowledged: "I apologize, I should not have laughed, but it was funny to me." (Ex. 1 at 317:23-318:6). Plaintiff's counsel later admitted: "I will say, Mr. White, yes, I did laugh at some points during the deposition." (*Id*. at 383:6-11). This conduct was designed to demean and humiliate the witness, to communicate to Mr. Stittum that Plaintiff's counsel did not take his testimony seriously, and to intimidate him into providing different answers than those he genuinely believed to be true and accurate.

Similarly, when Mr. White interposed objections for the record, as is counsel's right when defending a deposition being taken of their client, Plaintiff's counsel responded with laughter and derision. Such conduct demonstrates a fundamental lack of respect for the deposition process and for opposing counsel.

### C. *Plaintiff's Counsel Interrupted and Cut Off Defense Counsel When Attempting to Make Objections*

Defense counsel has the right to object to improper questions during a deposition to preserve issues for the record. Throughout Mr. Stittum's deposition, Plaintiff's counsel repeatedly interrupted defense counsel while objections were being stated, often cutting off the objection before it could be completed. This conduct was so pervasive that the court reporter was forced to intervene.

For example, Mr. White attempted to make an objection but was cut off by Plaintiff's counsel. Defense counsel: "You've asked the same question repeatedly. He has answered your question at this point. It's—" Plaintiff's counsel interrupted: "No, he hasn't." Then the court reporter interjected: "Wait a minute, wait a minute, wait a minute. Excuse me, Ms. Green, Mr. White wasn't finished." (Ex. 1 at 263:25-264:4). This conduct is particularly egregious because it prevented defense counsel from properly preserving the record and protect his client's interests.

Federal Rule of Civil Procedure 30(c)(2) provides that an objection must be stated concisely in a nonargumentative and nonsuggestive manner. Fed. R. Civ. P. 30(c)(2) While this rule requires that objections be stated concisely, it does not authorize Plaintiff's counsel to interrupt or cut off the attorney making the objection. Plaintiff's counsel's conduct in interrupting Mr. White's objections violated the spirit and purposes of the Federal Rules and prevented the creation of a proper record.

Rather than conducting the deposition in a professional manner befitting officers of the court, Plaintiff's counsel also engaged in repeated arguments with defense counsel throughout the deposition. These arguments were initiated by Plaintiff's counsel, were unnecessary to the conduct of the deposition, and served only to create a hostile and contentious atmosphere. The following exchange is illustrative of Plaintiff's counsel's argumentative conduct:

*Plaintiff's counsel:* "Now, you are now at this point interfering with my ability to ask questions with the deposition. So I need to ask my questions. This has not been asked and you pretending everything has been asked is not helping your client or anyone else. So I know it's getting late, but please stop interfering with the deposition. I need the ability to ask my questions about this important claim in the case, sir."

*Mr. White:* "Counsel, I am not interfering with this deposition and I have the right to make a record of any and all objections I deem appropriate, so please don't use your-"

*Plaintiff's counsel:* "You don't have a right to make it up as you go along."

*Mr. White:* "Excuse me, counsel. Do not talk over me. As I was saying, please feel free to proceed with your questions and I will make a record as appropriate. That we disagree should not change how you proceed." (Stittum Dep. at 291:9-292:9).

A deposition is not the proper forum for Plaintiff's counsel to engage in arguments with defense counsel. Such conduct delays the proceedings, increases the expense of litigation for all parties, and is fundamentally inconsistent with the requirement that depositions be conducted in a manner simulating a courtroom.

### D.  Plaintiff's Counsel Repeatedly Asked Questions That Had Already Been Answered

Throughout the deposition, Plaintiff's counsel asked Mr. Stittum the same questions repeatedly, despite the fact that he had already provided complete and truthful answers. When Mr. Stittum or defense counsel pointed out that the question had been asked and answered, Plaintiff's counsel would either become argumentative or simply rephrase the question slightly and ask it again. The chart below illustrates a few examples of the extent of Plaintiff's counsel's repetitive questioning:

| Repeated Questions | Times Asked | Transcript Citations |
|---|---|---|
| Whether Mr. Stittum ever observed excessive force or police misconduct by any officer during his career | 4+ times | Mr. Stittum stated: "For the fourth time, ma'am, I told you that I hadn't seen... that type of conduct." (Ex. 1 at 22:23–23:4) |

6

| Whether this was Nickerson's investigation, not Mr. Stittum's | 2+ times | (Ex. 1 at 119:10-20) |
| Whether Mr. Stittum was written into the report as present for the conversation with Elking | Multiple times | Defense counsel stated "you've asked the same question repeatedly" (Ex. 1 at 260-268) |
| Whether the bomb and arson unit was occupied by Mr. Stittum and Bailey | Multiple times | (Ex. 1 at 289:10-11; 289:17-18; 297:8-9) |
| Whether Mr. Stittum ever wore hats | 4-5+ times | Plaintiff's counsel acknowledged: "I went to great pains to give you an opportunity... I actually asked you clarifying questions four to five times" (Ex. 1 at 308-312) |

When defense counsel objected that Plaintiff's counsel had "asked the same question repeatedly" and that Mr. Stittum had "answered your question at this point," Plaintiff's counsel dismissed the objection, stating: "No, he hasn't... I'm trying to continue asking questions and all he's saying is I don't know, I don't know and I don't know, and he needs to stick with the line of questioning because I am permitted to continue questioning about this." (Ex. 1 at 263:21–264:12). Defense counsel explicitly stated: "At this point you're harassing the witness." (*Id*. at 293:1).

There is a clear difference between testing the credibility of a witness and blatant badgering. Plaintiff's counsel's questioning of Mr. Stittum crossed that line. "I don't know" is a permissible response to a deposition question and does not necessitate the need for Plaintiff's counsel to repeat the same questions again and again. Plaintiff's counsel engaged in repetitive, accusatory, and harassing questioning of Mr. Stittum designed not to elicit information, but to wear down, intimidate, and punish Mr. Stittum when he provided answers that did not conform with Plaintiff's counsel's theory of the case.

### E. *Plaintiff's Counsel Attempted to Elicit Information Protected by Attorney-Client Privilege*

On multiple occasions during the deposition, Plaintiff's counsel attempted to question Mr. Stittum about communications between Mr. Stittum and his attorneys in this litigation. When defense counsel objected and instructed the witness not to answer on the grounds of attorney-client privilege, Plaintiff's counsel argued with defense counsel and, at times, attempted to rephrase the question in a manner designed to elicit essentially the same privileged information.

Specifically, after taking a short, comfort break, once everyone was back on the record, Plaintiff's counsel repeatedly asked Mr. Stittum the following questions:

- "What did you and your counsel talk about on the break?"
- Did you discuss with your counsel during the break what you just testified to before your counsel requested a break?"
- Did your counsel talk to you about what you should say in this deposition on this break that your counsel requested?"
- Did your counsel coach you on how to testify in this deposition on the break?"

(Ex. 1 at 75:5-77:21). Plaintiff's counsel had no grounds or reason to assume that Mr. Stittum had in any way been "coached" by defense counsel on a break. Plaintiff's counsel did not ask those questions because she had a reasonable suspicion that Mr. Stittum was being improperly coached. Rather, Plaintiff's counsel asked those questions in the hopes that Mr. Stittum, who is not an attorney, would break privilege and reveal the private conversations he has had with his attorneys. Despite defense counsel's objections and instructions not to answer clear questions invading attorney-client privilege, Plaintiff's counsel continued to ask these types of questions.

Federal Rule of Civil Procedure 30(c)(2) provides that a person may instruct a deponent not to answer when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion to terminate or limit the examination. Fed. R. Civ. P. 30(c)(2). Defense counsel properly invoked this rule to protect attorney-client privileged communications. Plaintiff's

8

Counsel's repeated attempts to elicit privileged information and her argumentative responses to defense counsel's proper invocation of the privilege, constitute misconduct.

### F. Plaintiff's Counsel Engaged in Yelling, Shouting, and Badgering of the Witness

Perhaps most egregiously, Plaintiff's counsel engaged in yelling, shouting, and aggressive behavior directed at both Mr. Stittum and defense counsel. This conduct created an atmosphere of intimidation and hostility wholly inconsistent with the proper conduct of a deposition. Beyond the conduct described above, Plaintiff's counsel repeatedly crossed the line from legitimate credibility testing into improper accusation and badgering. Rather than presenting contradictory evidence and allowing Mr. Stittum's testimony to stand, Plaintiff's counsel directly accused Mr. Stittum of lying on multiple occasions:

- "And when you just told me you've never worn a hat in your life, that was a lie, right?" (Ex. 1 at 317:14-16);
- "So now we know what it looks like when you're caught in a lie because I—" (*Id*. at 320:3-5);
- "How is that not a lie?" (*Id*. at 319:20);
- "And the reason you're telling these lies in this deposition is because in 1991 you understood that your fellow detectives were assaulting a suspect and you did absolutely nothing to report it, right?" (*Id*. at 375:19-24);
- "You're lying about your involvement in the Cummins case because you know there was misconduct and you're trying to pretend like you didn't know anything about it, right?" (*Id*. at 376:3-7);
- "You're lying in this case about your memory and involvement because you know Nickerson fabricated evidence and caused my client to be wrongfully arrested and imprisoned, right?" (*Id*. at 377:20-24).

Plaintiff's counsel's questions directly accusing Mr. Stittum of lying were hostile, argumentative, and ultimately designed to harass Mr. Stittum rather than elicit facts during discovery.

Plaintiff's counsel also improperly testified rather than questioned, stating (often shouting) her own opinions and positions. For example, Plaintiff's counsel testified, "I just want to be clear. My position is this was never said, it's all made up and it's a flat-out lie…" (Ex. 1 at 284:23-25); "I hear you say that it possibly could be a problem and I'm challenging you. And I'm suggesting

it's definitely a problem, right?" (*Id*. at 233:12-15). Such conduct is not legitimate questioning but rather argument disguised as questioning.

### G.  Plaintiff's Counsel Showed a Picture of Mr. Stittum's Late Wife and Laughed

In the most callous and offensive display of misconduct, Plaintiff's counsel showed Mr. Stittum a photograph of his late wife during the deposition. Mr. Stittum's reaction was visceral and immediate: "Where did you get that photograph from? That's my deceased wife. That's my deceased wife…. Deceased wife, 52 years, ma'am. That's my deceased wife of 52 years. I take total offense, total offense to you posting that picture, ma'am. You don't have my permission to post that picture." (Ex. 1 at 315:5-13).

Rather than acknowledging Mr. Stittum's obvious distress, Plaintiff's counsel callously responded, "I didn't post a picture. I'm showing you a picture in your deposition —and asking you are—setting aside the woman in the photograph, I'm not—" Mr. Stittum interrupted: "We won't set aside the woman in the photograph. That's my—that's my deceased wife of 52 years. We will not do that." (Ex. 1 at 315:14-22). Plaintiff's counsel offered only a perfunctory apology followed by dismissive continuation: "Well, I apologize. But in any event—" to which Mr. Stittum responded: "Her apologies are not accepted." (*Id*. at 317:10-13). When Mr. Stittum stated that he took offense to the picture being shown at his deposition, Plaintiff's counsel laughed.

This conduct is beyond the pale of professional behavior and has no legitimate purpose in the context of a deposition. The display of the photograph of Mr. Stittum's late wife, followed by laughter at his offense, was designed solely to harass, humiliate, and emotionally distress Mr. Stittum. Such conduct would never be permitted in a courtroom and should not be tolerated in a deposition. It reflects a fundamental disregard for basic human decency and for the rules of professional conduct that govern attorneys.

### H. The Court Reporter's Inability to Create a Transcript Demonstrates the Severity of Plaintiff's Counsel's Conduct

Perhaps the most compelling evidence of the severity of Plaintiff's counsel's misconduct is the court reporter's repeated inability to create an accurate transcript. On multiple occasions, the court reporter was forced to halt the proceedings because Plaintiff's counsel was speaking over the witness or defense counsel to the point that no record could be made.

At the deposition, after Plaintiff's counsel spoke over the witness while accusing him of lying, the court reporter stated: "I'm sorry, I'm sorry. Stop, please. Excuse me, please. I cannot type two people at the same time. You are not going to get a transcript." (Ex. 1 at 320:6-10). This explicit warning that the parties would receive no transcript demonstrates that Plaintiff's counsel's conduct had reached the point where the fundamental purpose of the deposition was being defeated.

The court reporter was forced to intervene on numerous other occasions: "Wait a minute, wait a minute, wait a minute. It's too late in the day for everybody talking over the top of each other." (Ex. 1 at 287:19-23); "I'm sorry, I'm sorry. We're still on the record. I can only do one at a time." (*Id*. at 379:20-22). The court reporter is a neutral, disinterested party whose sole function was to create an accurate record. When the court reporter is forced to repeatedly intervene and ultimately warns that no transcript will be produced, it constitutes contemporaneous, neutral documentation of misconduct so severe that the deposition process itself has broken down.

### I. Similar Misconduct Occurred During the Deposition of Defendant Clyde Bailey

The pattern of misconduct exhibited by Plaintiff's counsel during Mr. Stittum's deposition is not an isolated incident. Plaintiff's counsel engaged in substantially similar conduct during the deposition of Defendant Clyde Bailey on February 4, 2026, nearly one week later. This pattern

only further demonstrates that the misconduct is part of a deliberate litigation strategy rather than an aberration.

During Mr. Bailey's deposition, Plaintiff's counsel repeatedly cut off the witness during his responses. Defense counsel was compelled to object, "You're cutting off the witness again. He was in the middle of a statement. I ask that Mr. Bailey be allowed to finish his response. (Deposition Transcript of Clyde Bailey, attached hereto as Ex. 2, at 137:6-9). Plaintiff's counsel also engaged in repeated argumentative questioning and improper commentary during the Bailey deposition. Defense counsel objected throughout to the argumentative nature of Plaintiff's counsel's questions. Rather than curb her questioning, when defense counsel objected to Plaintiff's counsel's commentary, Plaintiff's counsel responded by accusing defense counsel of unprofessional conduct.

Plaintiff's counsel also explicitly stated her frustration with the witness during Mr. Bailey's deposition, lecturing him on how to answer questions: "I just want to put on the record, for this last 10 or 15 minutes, you're not answering my questions. And we – it's not my goal to be with you here for the full seven hours we have under the rules, but you don't answer my questions, I have to keep asking the same questions over and over again." (Ex. 2 at 175:10-17). Defense counsel objected to this conduct, stating, "I'm going to object to the soliloquy that counsel just provided. It's not necessary. Mr. Bailey is answering the questions." (*Id*. at 176:6-9). This exchange demonstrates the same pattern of harassment and improper conduct that pervaded Mr. Stittum's deposition.

Perhaps most troublingly, Plaintiff's counsel repeatedly accused defense counsel of improperly coaching the witness—accusations that were entirely unfounded and designed to cast aspersions on opposing counsel's professional conduct to divert attention away from her own

misconduct. When defense counsel requested a break, Plaintiff's counsel stated on the record: "Before you-all confer on a break, I just want to get his full memory." (Ex. 2 at 106:3-9). Defense counsel objected to this improper insinuation: "I object to that comment, that we are going to confer on a break. That's inappropriate. You don't know what we're going to do. And you shouldn't be making commentary like that during this." (*Id*. at 106:10-14). Later in the deposition, when defense counsel made objections to preserve the record, Plaintiff's counsel accused defense counsel of coaching the witness through speaking objections: "And that's why speaking objections are not permissible, because all you're doing is parroting back what your counsel literally just said. ... And that's why, Ms. Adeeyo, I would ask you to please refrain from making speaking objections, because you're essentially coaching the witness." (*Id*. at 264:24–265:8).

These accusations of witness coaching are not only improper but also ironic, given that attorneys from Plaintiff's counsel's own firm have been admonished by courts for the very conduct Plaintiff's counsel accuses defense counsel of engaging in. As detailed below, Judge Silver explicitly warned another attorney of the same firm: "If you in any way coach the witness, then I will tell you that I will have you in front of me for a contempt violation." August 15, 2018 Hearing Transcript, *Milke v. City of Phoenix, et al.*, Case No. CV-15-462-PHX-ROS (D. Ariz.), attached hereto as Ex. 3, at 11:9-11). Plaintiff's counsel's unfounded accusations against defense counsel are yet another example of the pattern of unprofessional conduct that has characterized Plaintiff's counsel's approach to depositions in this case.

## STANDARD OF LAW

Federal Rule of Civil Procedure 30 governs conduct occurring during a deposition. Rule 30 authorizes courts to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair

examination of the deponent." Fed. R. Civ. P. 30(d)(2). The Court also has inherent authority to issue sanctions for any conduct that "abuses the judicial process." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2013 WL 449775, at *17 (D. Minn. Jan. 8, 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). "A Court's inherent powers includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers*, 501 U.S. at 44–45).

## ARGUMENT

### I.    Striking Mr. Stittum's Deposition Is An Appropriate Sanction.

Courts have recognized that striking a deposition is an appropriate sanction for serious deposition misconduct. The following case law provides multiple examples of conduct warranting sanctions that are directly analogous to Plaintiff's Counsel's behavior.

First, in *Craig v. St. Anthony's Medical Center*, 384 F. App'x 531 (8th Cir. 2010), the Eighth Circuit affirmed the imposition of Rule 30(d)(2) sanctions for deposition misconduct. The court explained that Rule 30(c)(2) governs the conduct of examinations by deposition, requiring that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." The court held that Rule 30(d)(2) authorizes the district court to "impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent," and affirmed a $1,000 sanction where the record revealed "a substantial number of argumentative objections together with suggestive objections and directions to the deponent." *Id.*

In *Tajonera v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 13533520 (E.D. La. Sept. 30, 2015), the court addressed conduct strikingly similar to Plaintiff's counsel's and found it sanctionable. The court held that counsel's conduct of "asking Hoffman the same improper

14

question some seven times over four pages of transcript" while "repeatedly "interrupt[ing], argu[ing] with and lectur[ing] the witness" was "a violation of Rule 30, the District Judge's [prior] Order … and the Code of Professionalism." *Id*. at 5-6. The *Tajonera* court further found that such conduct "unquestionably delayed and impeded the fair examination of the witness" and that "neither his repetitive and abusive questioning of Hoffman nor the lengthy speaking objections he lodged during Welch's questioning would be allowed in any courtroom by any judge in this District." *Id*. at *9. The parallels to Plaintiff's counsel's conduct are striking. Like the sanctioned attorney in *Tajonera*, Plaintiff's counsel repeatedly asked the same questions after receiving answers, repeatedly interrupted and argued with the witness, demanded "yes or no" answers in an aggressive tone, and engaged in conduct that would not be permitted in any courtroom.

In *Landers v. Kevin Gros Offshore, L.L.C.*, 2009 WL 2046587 (E.D. La. July 13, 2009), the court addressed counsel's yelling and aggressive tone during depositions—conduct directly analogous to Plaintiff's counsel's behavior. The court found that counsel's "tone of voice can best be described as yelling" and that the record demonstrated that counsel "repeatedly failed to conduct his examination" as he would at trial and "denied [the witness] the same rights and privileges due a witness testifying in court at a trial." *Id*. at *3-4. Such conduct warranted the imposition of sanctions. Plaintiff's counsel engaged in the same type of conduct: yelling at the witness, creating an atmosphere of intimidation, and denying Mr. Stittum the dignified atmosphere to which he was entitled.

In *Doe I v. Exxon Mobil Corporation*, 539 F. Supp. 3d 59 (D.D.C. 2021), the court addressed extensive deposition misconduct and imposed sanctions under Rule 30(d)(2). The court held that "sanctions for a defending attorney's 'imped[ing], delay[ing], or frustrat[ing] the fair examination of [a] deponent,' Fed. R. Civ. P. 30(d)(2), are awarded when counsel's conduct

repeatedly disrupts the deposition and prevents it from proceeding fairly." *Id*. at 76. The court further held that sanctions are warranted when a deponent's – or examining counsel's – conduct is "severe, repeated, and pervasive," *Id*. at 73 (citing *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 196-97 (E.D. Pa. 2008)). Plaintiff's counsel's conduct was severe, repeated, and pervasive throughout Mr. Stittum's deposition. The court reporter's explicit warning that the parties would not "get a transcript" demonstrates that the conduct had reached the point where the fundamental purpose of the deposition was being defeated.

In *Armstrong v. Hussmann Corp.*, 163 F.R.D. 299 (E.D. Mo. 1995), this Court addressed deposition misconduct involving interruptions and improper conduct by counsel. The court held that "[i]n general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." *Id*. at 303. The court further held that "[b]ecause attorneys are prohibited from making any comments, either on or off the record, in the presence of a judicial officer, which might suggest or limit a witness's answer to an unobjectionable question, such behavior is likewise prohibited at depositions." *Id*. (citing *Hall v. Clifton Precision*, 150 F.R.D. 525, 530-31 (E.D. Pa. 1993)). The *Armstrong* court ordered sanctions under 28 U.S.C. § 1927, finding that counsel's interruptions were "objectively unreasonable" and, given that the attorneys "persisted in their interruptions during depositions which spanned eleven months and which are clearly not permitted by the Federal Rules of Civil Procedure," the court further found "that the interruptions were made in bad faith." *Id*. at 303-04.

In *McElheny v. Masterack Installation, Inc.*, 2021 WL 5548142 (W.D. Mo. 2021), the court addressed improper conduct during a deposition and imposed sanctions under Rule 30(d)(2). The court emphasized that "[p]reventing [discovery] abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them." *Id.* at *2 (quoting *Security Nat. Bank*

*of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015)). The court further noted that "[t]he purpose of sanctions is to 'penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id*. After finding that counsel had "engaged in prohibited deposition behavior," the court held that "sanctions should be imposed" and that "the question before the Court is whether the sanctions sought are reasonable and necessary to deter such conduct." *Id.* at *2-3. Similarly, in *Fashion Exchange LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 305 (S.D.N.Y. 2019), the court held that sanctions are appropriate where counsel's conduct "essentially destroy[s] a deposition."

The misconduct exhibited by Plaintiff's counsel during the Stittum deposition rises to the level warranting the sanctions of striking the deposition. The pervasive nature of the misconduct – including repeatedly cutting off the witness, laughing at testimony and objections, interrupting defense counsel's objections, arguing with defense counsel, asking repetitive questions, attempting to elicit privileged information, yelling and shouting, and showing a picture of the witness's late wife and laughing at his distress – fundamentally undermine the integrity of the proceedings. The deposition cannot fairly be said to represent Mr. Stittum's testimony given in a courtroom-like atmosphere free from harassment and intimidation.

## II.    Prior Instances of Similar Misconduct by Plaintiff's Counsel's Firm Demonstrate the Need for Serious Sanctions.

The misconduct exhibited by Plaintiff's counsel during the Stittum deposition is not an isolated incident. Attorneys from the Plaintiff's counsel's firm have previously been admonished by courts for similar deposition misconduct. Plaintiff's counsel has also engaged in similar misconduct at other officer depositions. This pattern of behavior demonstrates that the sanction of striking Defendant Stittum's deposition is both appropriate and necessary to deter future misconduct.

In *Milke v. City of Phoenix, et al.*, Case No. CV-15-462-PHX-ROS (D. Ariz.), the Honorable Roslyn O. Silver conducted a hearing on August 15, 2018 to address a discovery dispute arising from the conduct of another attorney from the same firm, who also has an appearance filed in this case, during a deposition. *See* Ex. 3. Defense counsel in *Milke* filed a joint emergency motion based on what they alleged were improper speaking objections, coaching of the witness, and contentious behavior during the deposition.

At the hearing, this attorney from Plaintiff's counsel's firm acknowledged his misconduct, stating, "I did lose my temper today. I have lost my temper before. There is no excuse for that. And I apologize." Ex. 3 at 5. Despite this admission, this attorney attempted to justify his conduct by stating that the case was "an extremely emotional, contentious case" and that "sometimes gets the better of me." *Id*. at 5-6. Defense counsel detailed this attorney's conduct, including making speaking objections that effectively coached the witness, stating that questions were "ridiculous" and "unintelligible," and declaring, "I'm not going to let her trick this witness." *Id*. at 9. Defense counsel stated that "the manner of the questioning made the defendants jointly conclude that we could not continue on with the deposition" and that they "could not rely on the avowal of counsel that this kind of behavior would not continue absent a ruling by this Court." *Id*. at 7-8.

Judge Silver's admonishment of this attorney from Plaintiff's counsel's firm was unequivocal and severe:

> This is not the first case where the issues are emotional. In fact, I've had cases where the issues were even more emotional than this one. It is—Mr. Brustin, what you have engaged in during this deposition is not only inappropriate and unacceptable, it is unprofessional. I have never in my experience as a lawyer or a judge, now 40 some years as a lawyer and 24 years of that as a judge, ever heard or had presented to me the use of profanity, on the record or other otherwise, by an attorney.

*Id*. at 10-11. Judge Silver ordered this attorney to limit his objections to stating "form" only and nothing more, and warned him, "If you in any way coach the witness, then I will tell you that I will have you in front of me for a contempt violation. […] And your apology, now retroactively, is again totally unacceptable. And if we have to, this deposition will be taken in front of me. So from this point forward, whether or not you think you're capable of it, Mr. Brustin, you are to act as a robot. And if you can't, you get another attorney to represent your client." *Id*. at 11. The prior admonishment of an attorney from Plaintiff's counsel's firm for strikingly similar deposition misconduct demonstrates that the conduct exhibited during the Stittum deposition is part of a pattern of behavior that warrants serious sanctions.

In *Hicks v. City of Philadelphia*, Case No. 2:19-cv-00466 (E.D. Pa.), Plaintiff's counsel has engaged in strikingly similar conduct during the deposition of Philadelphia Police Officer Robert Ellis, a defendant in that case. During his testimony at the *Hicks* trial in August 2025, Officer Ellis described the trauma he experienced during his deposition conducted by Plaintiff's counsel:

> What was so dramatic about it, […] Well, I'm sorry. Ms. Green was asking me more about the first wife. Asking me about her last name. I don't talk to her, I divorced her, I'm gone. I don't know anything about it. […] But that was more intake on you asking me questions about that-nothing has to do with the case. Then you go to the second wife, and you want to know everything about her. Still have nothing to do with the case. You went to the third wife and really got m[e] shocked and really hurted me […] when she asked me about it. I said I cannot talk about that one. I don't want you-she kept going on. You know what I said? The reason why I don't want to talk about it is she died. Lung cancer. You know what I got out of that? They keep on going. I didn't get, oh, sorry about the condolence, I got none of that. So it was just more of just going on to that.

(Hicks Trial Tr., Day 5, attached hereto as Ex. 4, at 261:20-262:15). Officer Ellis described how Plaintiff's counsel's treatment of him during his deposition was so traumatic that it caused him to become physically ill: "Like I said, I'm being honest with you, I don't recall it. That's all me and Ms. Green did was fight and argue through the whole entire deposition. […] My deposition was

19

14 hours, three days of us fighting. Asking me about everything else, including the case. […] So that was just-it was just-it just hurted. You know, I got sick on the second day." (*Id*. at 260:6-21).

The testimony from the *Hicks* trial demonstrates that Plaintiff's counsel's conduct during Mr. Stittum's deposition – showing a photograph of his deceased wife and then laughing when he expressed offense – is not an aberration but rather part of a deliberate pattern of using emotionally charged material concerning deceased spouses to harass and destabilize witnesses during depositions. In both cases, Plaintiff's counsel showed callous disregard for the witnesses' grief and continued pressing forward with her questioning despite obvious emotional distress.

As the court noted in *Tajonera*, "the primary purpose of sanctions is to deter frivolous litigation and ongoing and future abusive tactics. […] Sanctions seek to deter both the culpable attorney and members of the bar in general." 2015 WL 13533520, at *4. The Eighth Circuit has emphasized that "[p]reventing [discovery] abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them." *Security Nat. Bank of Sioux City, IA v. Day*, 800 F.3d at 942. Given the pattern of misconduct by attorneys from Plaintiff's counsel's firm, as evidenced by Judge Silver's admonishment in the *Milke* case and Plaintiff's counsel's prior deposition conduct, additional sanctions beyond monetary are warranted to deter future misconduct.

Plaintiff's counsel's pattern of misdeeds during depositions is a continued issue that Defendants are regrettably now forced to bring to the attention of this Court. The evidence before this Court demonstrates not a one-time mistake, but a deliberate litigation strategy characterized by harassment, intimidation, and abuse directed at witnesses and opposing counsel alike – a pattern that will continue unless this Court intervenes. Had the conduct displayed at Mr. Stittum's deposition not been repeated at Mr. Bailey's deposition – including repeatedly cutting off the

20

witness during his responses, engaging in argumentative exchanges with defense counsel, and lecturing the witness rather than conducting proper examination as detailed above – defense counsel's concerns may have been quelled. However, the continuation of this pattern from the Stittum deposition through the Bailey deposition, with no modification of behavior, demonstrates that sanctions are necessary to prevent further misconduct in the remaining depositions and proceedings in this case.

**<u>CONCLUSION</u>**

WHEREFORE, Defendants respectfully request that this Honorable Court enter an order: (1) striking the deposition of Defendant Gary Stittum as an appropriate sanction for Plaintiff's counsel's misconduct; (2) prohibiting Plaintiff's counsel from engaging in any similar behavior for the remainder of discovery in this case; and (3) granting such other and further relief as the Court deems just and proper.

Dated: February 20, 2026                                    Respectfully submitted,

                                                            */s/ Natalie Adeeyo*
                                                            Shneur Nathan, Avi Kamionski,
                                                            Natalie Adeeyo, & Breana Brill
                                                            Nathan & Kamionski LLP
                                                            206 S. Jefferson Street
                                                            Chicago, IL 60661
                                                            (312) 957-6639

21

## CERTIFICATE OF SERVICE

I, Natalie Y. Adeeyo, an attorney, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

/s/ Natalie Y. Adeeyo
Natalie Y. Adeeyo